UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) FRANCES SUTHERLAND, | |
| Plaintiff, | Case No.  16-CV-00641- JHP-PJC |
| v. | |
| 1) OKLAHOMA WESLEYAN UNIVERSITY, INC., | **(Jury Demanded)** |
| Defendant. | |

## COMPLAINT

COMES NOW the Plaintiff, Frances Sutherland ("Plaintiff" or "Ms. Sutherland"), by and through her undersigned attorney, and hereby complains and alleges against the above-named Defendant, based upon knowledge, information and a reasonable belief derived therefrom, as follows:

### INTRODUCTION

Ms. Sutherland seeks damages to remedy violations of her rights secured by Title IX of the Civil Rights Acts and for breach of contract and breach of good faith and fair dealing by Defendant Oklahoma Wesleyan University ("OKWU" or the "Defendant") in relation to those rights.  Ms. Sutherland tolerated pervasive discrimination for being a single mother while enrolled at OKWU in her attempts to obtain her nursing degree.  She endured intense religious-based pressure and targeted hostility by OKWU administration and faculty for speaking openly about her status.  Even after she coercively feigned agreement with OKWU's discriminatory views of her private life and repented to

1

administrators, she faced trumped up false accusations and unwarranted expulsion as punishment for minor infractions.   Accordingly, she now petitions this Court for redress in the form of damages, costs and reasonable attorney's fees in relation to the violation of her rights, as well as damages for breach of contract and intentional infliction of emotional distress pursuant to Oklahoma common law.

PARTIES

1.     Plaintiff, Frances Sutherland, is a citizen of Oklahoma.   At all times relevant herein, she was a student at Oklahoma Wesleyan University in Bartlesville, Oklahoma.

2.     Defendant, Oklahoma Wesleyan University, Inc., is a private, not-for-profit corporation, created and existing under Oklahoma law, which is owned and operated by the Wesleyan Church.

3.     At all times relevant hereto, and in all the actions described herein, Defendant's actions took place in the State of Oklahoma, County of Washington.

4.     Defendant did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well established and settled law.

JURISDICTION

5.     This Court has jurisdiction over the claims set forth in this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights), as there exist claims based upon 42 U.S.C. § 1681.

6.     Supplemental jurisdiction over Ms. Sutherland's pendant state law claims is proper pursuant to 28 U.S.C. § 1367(a), as there exist claims arising out of the same transaction and occurrence as her federal claims.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that the claims arose in this district, and Defendant is located in this district.

8.     Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. § 1988.

### GENERAL FACTUAL ALLEGATIONS

9.     Ms. Sutherland is a single mother who moved from Houston, Texas to Bartlesville, Oklahoma to attend OKWU.  She matriculated to OKWU's RN to BSN program in fall 2013.  She was on track to graduate at the end of the 2015-2016 year.

10.     In enrolling in OKWU, Ms. Sutherland and OKWU entered into several contracts via school handbooks defining both the student's and the school's obligations for academics, discipline, and religious elements of university administered programs. The relevant handbooks include:

   a)  The Student Handbook (hereinafter "Student Handbook"), which defines its purpose as to "offer experiences in biblical studies, general studies, business, education, nursing, the arts, sports medicine, the sciences, and pre-professional and professional training in the light of Christian principles."

   b)  The Nursing Program Handbook (hereinafter "BSN Handbook") details programmatic, disciplinary, and confidentiality requirements for OKWU

Nursing students.  As per Confidentiality and HIPPA, BSN Handbook states "Clients are not to be discussed outside of class or in conferences."

c)  The BSN Handbook also mandates BSN student's compliance with Student Handbook regulations.

11.  Ms. Sutherland complied with the academic expectations set forth in both the Student Handbook and the BSN Handbook.  During her time in the program, Ms. Sutherland maintained an A average, earning several academic awards and a place on the honor roll for each semester she was permitted to complete.  Ms. Sutherland earned 100% performance review in the externship she completed as a Critical Care Unit Nurse Extern and received several award letters recognizing her diligent efforts in the program.

12.  Ms. Sutherland complied with the extensive moral and religious obligations mandated in the Student Handbook, including the obligation to attend chapel, religious classes, and full-day religious seminars as required institutionally and programmatically despite such mandates and messages contradicted the way she practiced her own Catholic faith.

13.  Ms. Sutherland complied with the BSN Handbook mandates related to HIPPA and Confidentiality assurances, only discussing clients inside OKWU classroom and conferences and in relation to class discussion.

14.   Ms. Sutherland also relied on promises included in the Student Handbook, including non-discrimination on page 54 which states: "In compliance with federal law, including the Provision of Title IX of the Educational Amendments of 1972, Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act of 1990,

4

Oklahoma Wesleyan University does not illegally discriminate against persons on the basis of race, religion, sex, color, national or ethnic origin, age, disability, or military service in the administration of educational policies, programs, or activities, its admissions policies, scholarship and loan programs, athletic or other University administered programs, or employment."

### Ms. Sutherland's Inequitable Treatment

15.     Despite Ms. Sutherland's compliance with university administered rules, OKWU singled out Ms. Sutherland repeatedly for hostile treatment due to her status as a divorced single mother attending a devout, Wesleyan Church-run college.

16.     Beginning the winter semester of 2015, Ms. Sutherland disclosed in a class that she was a divorced single mother.  Though she did not keep it a secret, her status was not openly discussed prior to the January 2015 semester.

17.     Upon disclosing her status, OKWU Professor Nancy Eckert repeatedly targeted Ms. Sutherland in class discussions in front of the class and required that Ms. Sutherland repent for her divorced single mother status.

18.     Professor Nancy Eckert regularly requested Ms. Sutherland attend meetings in her office, where she initiated conversations about divorce, single parenthood, and religion and told Ms. Sutherland that she must repent.  At one meeting, for instance, Ms. Sutherland was instructed to lay with her face touching the floor and pray for forgiveness.

19.     In a professor-led discussion about the upcoming "Josh McDowell Conference on Marriage and Sexuality," Ms. Sutherland openly voiced her concern that

attendance at the meeting was inappropriate given that she had already been married, borne a child, and divorced.

20.     In response, the OKWU Professor Birden exclaimed in front of the entire class "You need it more than anybody!"

21.     Days before the conference, a classmate reiterated hateful connotations about Ms. Sutherland's parenting. Colby Pachecco, a classmate who witnessed Ms. Sutherland being interrogated for her divorced single mother status, told her that she would "suck the life out of" newborn babies.  Ms. Sutherland was distraught and later relayed the incident to OKWU, to no avail.

22.     At the February 2015 "Josh McDowell Conference on Marriage and Sexuality," Ms. Sutherland was forced into an instructor-led group break-out session on homosexuality and single mothering.  The facilitator group comments against her again became increasingly hostile after she discussed her experience as a single mother in a positive way and defended her lifestyle choice.  Ms. Sutherland became upset and excused herself so that she could gain her composure.

23.     When she stepped out to recuperate from the hostility, Ms. Sutherland was approached by the Dean and a member of the nursing faculty and brought to the Dean's office.  Once there, she was interrogated about her status as a single mother, her divorce, her religion, and her life choices about her daughter's upbringing.  The direct, critical line of questions humiliated Ms. Sutherland.  As a result, she became even more upset and began to cry.

24. Despite Ms. Sutherland's obvious visible duress, the Dean and faculty member did not offer reprieve or to remediate the situation, but continued making accusatory comments about Ms. Sutherland's divorce, single motherhood and religion. They blamed her repeatedly for causing harm to her daughter by being a divorced single mother and not part of the Wesleyan Church.

25. The interrogation only ended after Ms. Sutherland relented and agreed to "confess" private details about her failed marriage and falsely agree with the administrator's portrayal of single motherhood. Following Ms. Sutherland's confession and agreements, the team of administrators told her she must pray with them before she could leave.

26. Ms. Sutherland missed time at the conference due to the time she was retained at the Dean's office and was humiliated and emotionally distraught by the attack.

27. Ms. Sutherland, both then and now, strongly disagreed with OKWU's perception of her lifestyle. However, she was afraid that disagreeing or leaving the Dean's office could be construed as insubordination or lack of professionalism and held against her as a conduct violation. Therefore, she did not attempt to leave, fearing retaliatory treatment and more embarrassing and inappropriate questions.

**OKWU's Pretextual Allegations Against Ms. Sutherland**

28. Ms. Sutherland continued encountering problems with OKWU faculty, staff, and students after she disclosed her status as a divorced single mother. Pretextual assaults against Ms. Sutherland included the following incidents:

a)  Ms. Sutherland was cited with a conduct violation following an incident with another student, Colby Pachecco, at a clinical site on February 5, 2015 when Pachecco told her she would "suck the life out of" the newborn babies. Upset, Ms. Sutherland walked out after completing all of her mandatory hours but before debriefing.  She had already unsuccessfully trying to reach the clinical coordinator for instruction prior to leaving.  While in the elevator with other OKWU students, including Pachecco, Ms. Sutherland said curse words to him.  Ms. Sutherland self-reported this incident to OKWU while she was in the Dean's office being interrogated for her divorced single mother status and religious beliefs.  While Ms. Sutherland faced disciplinary actions in relation to her reaction, Mr. Pachecco was not investigated for his discriminatory remarks against her.

b) Ms. Sutherland was again cited with a confidentiality violation in September 2015, following a classroom discussion where Ms. Sutherland relayed the story of an elderly patient who demonstrated overt, sexual, graphic behavior in relation to a bedpan while she was performing as a nurse.  When the patient's behavior occurred during her externship, the highly sexual behavior disturbed Ms. Sutherland and she reported it to fellow nurses, one of whom was her OKWU instructor.  The nurses advised Ms. Sutherland to ignore and forget it.  Ms. Sutherland later brought it up during a class discussion in September.  Despite the incident's relevance to the class discussion and the fact that other students relayed equally graphic stories with

much more privacy detail, Ms. Sutherland's disclosure was criticized because OKWU administration had a sensitive public relations reason for keeping Ms. Sutherland's clinical experience with the patient silent as the patient had a long history with OKWU.  In that situation, Ms. Sutherland did not disclose the patient's name, address, social security number, or other HIPPA-privacy details, but the instructor nonetheless filed confidentiality allegations.  Other students who brought up scenarios with much more identifying detail were not investigated for their class comments.

c)  Ms. Sutherland was cited with a final conduct violation in October 2015 when Ms. Sutherland inadvertently responded rudely to OKWU employee Skylar Witman.  In that situation, Witman's careless email caused 100s of emails to flood Ms. Sutherland's inbox and forcefully disrupted her studies. Ms. Sutherland sent Witman a responsive email saying "I hope you get fired for blowing everyone's inbox up and not being competent enough to clean up your mess," which Witman forwarded to the Dean of Nursing.  Here, Ms. Sutherland faced disciplinary allegations for her choice of rude words.

29.     This criticism contradicted OKWU's latitude with other students' behavior, whereby the other nine nursing students were allowed to behave reprehensibly and faced less harsh punishment.  For example:

a)  Colby Pachecco was not investigated or disciplined for his hateful words against Ms. Sutherland on February 5, 2015.  Conversely, Ms. Sutherland was disciplined for rude comments against Pachecco and Whitman.

9

b)  One student mocked both Ms. Sutherland and a professor, publicly posting pictures on a campus hallway and calling them "teacher of the month" and "student of the month."  For this, the student was disciplined with probation but faced no more punishment.

c)  The same student then repeatedly faked sexual actions with a dummy and posed for graphic pictures but was not penalized at all, despite her prior infraction.

d)  Students regularly discussed patients in the classroom using much more identifying information than Ms. Sutherland conveyed about her patient in September 2015.  None of these students faced confidentiality charges or dismissal for their disclosures.

**OKWU's Inadequate Disciplinary Procedures**

30.     After each allegation of wrongdoing, OKWU Student Handbook and BHC Handbook proscribe steps with which OKWU must comply.

31.     Student Handbook page 45 promises "Oklahoma Wesleyan University recognizes the need for consistency and fairness in its disciplinary procedures."

32.     The BSN Handbook further provides certain procedural protections in Progressive Discipline, including the pertinent parts:

a)  Step 1: Warning "The Instructor provides the student with a verbal warning or written feedback as to their status.  The instructor counsels the student regarding the area of weakness and criteria for successful completion of the course and makes recommendations for improvement.  Recommendations may

include but are not limited to - going to the nursing skills lab to practice skills, tutors, computer-assisted instruction.  These recommendations should be in writing and signed by both the instructor and student."

b)  Step 2: Conference "If a student has had a previous verbal warning and does not improve, and continues to perform at an unsatisfactory level, the faculty member should have a formal conference to review the performance deficit.  A formal conference consists of a meeting between the faculty and student in which the corrective action form, which has been completed by the faculty member, is discussed.  This report should identify specific course or program objectives not met and how they are not being met.  A contract is then established which includes specific criteria that the student must do to correct the deficit so the student can successfully progress through the program."

c)  Step 3: Probation "Probation is a trial period in which the student must improve or be withdrawn from the program.  A probation report on the Corrective Action Form identifying objectives not met, how they were not met, and then another contract will be formulated explicitly stating expectations that must be followed during the probationary period.  A meeting with the student and the dean to discuss the probation and the contract.  All parties will then sign the form."

d)  Step 4: Withdrawal "The withdrawing student must meet with the course instructor and/or Dean to complete all exit forms and have an exit conference within two weeks of the withdrawal."

33.     When Ms. Sutherland faced disciplinary allegations for using rude language in response to another student's harassment at the clinical site, OKWU did not provide procedural protections in line with consistency and fairness, its Progressive Discipline Steps or the 10th Circuit mandates that disciplinary hearings must be fundamentally fair.

a)  OKWU did not provide written notice of the charges or provide conversations or a hearing for Ms. Sutherland to prepare to offer a rebuttal or defense prior to the meeting.  OKWU only sent an email telling her to report to Dean Johnson's office.  In fact, Ms. Sutherland was not told that the meeting constituted any sort of progressive disciplinary step in accordance with BSN Handbook guidelines.

b)  Dean Johnson read from a paper, instructed Ms. Sutherland to sign it in order to stay in the program, and then retained the paper before ending the meeting.

c)  Although Ms. Sutherland was given a paper to sign indicating that she was on probation for violating a conduct rule, she was neither permitted to speak in her own defense nor asked any questions about the incident.  She was instructed to remain silent.

d)  Ms. Sutherland was not given a copy of the signed paper memorializing the step, nor was a new contract explicitly drafted to govern her future behavior.

34.     When the school alleged disciplinary violations for supposed confidentially noncompliance, OKWU again did not provide any procedural protections in line with

consistency and fairness, it's Progressive Discipline Steps or with 10th Circuit mandates that disciplinary hearings must be fundamentally fair.

      a)  During class discussion, the Professor told Ms. Sutherland that she was inappropriately discussing a patient and stated "This is a verbal warning."

      b)  OKWU never sent a memorialization of the verbal warning or any other documentation indicating Ms. Sutherland was out of compliance with OKWU's Nursing confidentiality rules or HIPPA mandates whatsoever.  As a nursing student, Ms. Sutherland was not aware OKWU considered her in-class discussion any sort of HIPPA or confidentiality violation.

      c)  Instead, Ms. Sutherland found out about the supposed confidentiality allegation when she retained a lawyer.  It was only months after she was expelled from the school that OKWU disclosed that Ms. Sutherland was accused of, investigated, charged with, and found in violation with the rule. OKWU took the further disciplinary steps without telling Ms. Sutherland anything whatsoever.

35.    When Ms. Sutherland faced disciplinary allegations for using a rude tone in an email to Skylar Whitman, OKWU still did not provide any procedural protections in line with consistency and fairness, it's Progressive Discipline Steps or with 10th Circuit mandates that disciplinary hearings must be fundamentally fair.

      a)  On October 5, 2015, Ms. Sutherland received an email saying "We will be having a mandatory meeting with you on Tuesday October 5, 2015 in the Miller Conference Room.  This conference room is located in the Chapel."

b)  OKWU's email did not indicate that Ms. Sutherland was being charged with a disciplinary violation or that the meeting constituted a hearing of any sort.

c)  She immediately responded via email inquiring as to the purpose of the meeting but did not receive an answer.

d)  Ms. Sutherland attended the meeting as directed.  At the meeting, she learned the school discovered OKWU considered her email to be a conduct violation.  She then attempted to detail her side of the story and also express contrition for her rude tone, to no avail.

e)  At the end of the meeting, Dr. Herron verbally announced Ms. Sutherland was being suspended from the BSN program.  OKWU did not provide documentation or written memorialization of the decision at the meeting.

36.    In the days and weeks following the meeting, the school still did not provide documentation or a findings letter to memorialize Dr. Herron's pronouncement of suspension.  In fact, Ms. Sutherland contacted the school several times to try to determine when her suspension ended, only to have to retain counsel to even elicit a response from administration to discover OKWU had "no desire to reestablish a relationship."

37.    OKWU policy does not offer a formal appeal process, so Ms. Sutherland is unable to demonstrate further formal compliance with OKWU procedures, although Ms. Sutherland attempted to appeal the arbitrary decision.  She sent emails to faculty, deans, and even the president of the school, to no avail.

## FIRST CAUSE OF ACTION

### TITLE IX SEX AND MARITAL STATUS/PARENTAL STATUS DISCRIMINATION
### 20 U.S.C. §§ 1681–1688

38.     Each of the allegations set forth in paragraphs 1 through 37, inclusive, are hereby incorporated by this reference as if realleged fully herein.

39.     Defendant OKWU is a recipient of federal funds and is subject to Title IX of the Education Amendments of 1972, as amended. 20 USC §1681, et seq., 34 C.F.R. §106.31.

40.     As such, Defendant OKWU is prohibited from engaging in sex discrimination, including discrimination on the basis of marital/parental status under Title IX, which provides, "No person in the United States shall, on the basis of sex, be [1] excluded from participation in, [2] be denied the benefits of, or [3] be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 USC §1691(a).

41.     Agents of Defendant were predisposed to discriminate on the basis of sex, marital and parental status, and acted in accordance with that predisposition when Ms. Sutherland faced disciplinary allegations, and ultimately expulsion, in conjunction with disclosing incidents while she was being disparagingly lectured to for being a divorced single mother.

42.     Agents of Defendant also harassed Ms. Sutherland on the basis of her marital and parental status when Ms. Sutherland was repeatedly singled out, berated, and forced to "confess" for her status as a single mother, which is also prohibited by Title IX.

43.     Defendant was deliberately indifferent to the harassment and discrimination against Ms. Sutherland by classmate Pachecco and again at the focus group at the conference, and in fact condoned and participated in further harassing behavior when OKWU agents belittled her and made her cry for her status as a divorced single mother.

44.     Defendant failed to take prompt, remedial action to address the discrimination and harassment directed at Ms. Sutherland by Pachecco and again by classmates in the focus group at the conference, and in fact condoned and participated further harassing behavior when OKWU agents belittled her and made her cry for her status as a divorced single mother.

45.      Defendant also treated Ms. Sutherland differently with respect to the terms, benefits and conditions of her educational program based upon unlawful consideration of her divorced single mother status by initiating, trying, and judging Ms. Sutherland guilty on a series of inflated conduct and fabricated confidentiality violations when the other nine students in the program were not punished as harshly or even at all for similar behavior and confidentiality disclosures.

46.     Defendant's action deprived Ms. Sutherland of access to educational opportunities and benefits provided by OKWU by singling her out of seminars and denying her participation while lecturing her on the wrongness of her divorced single mother status.

47.     Defendant's expulsion of Ms. Sutherland deprived Ms. Sutherland of access to educational opportunities and benefits provided by OKWU by wrongfully dismissing her from the school pursuant to pretextual conduct charges and fabricated

confidentiality violations because of Defendant's disapproval of her divorced single mother status.

48.     The actions of Defendant OKWU were intentional, in deliberate indifference to the rights and sensibilities of Ms. Sutherland, who was treated differently than her peers because of her divorced single mother status.

49.     As a direct and proximate result of Defendant's unlawful actions, Ms. Sutherland has suffered irreparable harm, injury, and damages, including but not limited to, monetary damages, loss of her bachelor education and BSN degree, time and resources, career opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment, and loss of personal and professional reputation, all to Ms. Sutherland's damages in an amount to be determined at trial but in excess of the jurisdictional threshold of this Court..

### SECOND CAUSE OF ACTION

*BREACH OF CONTRACT*

50.     Each of the allegations set forth in paragraphs 1 through 49, inclusive, are hereby incorporated by this reference as if realleged fully herein.

51.     Courts in Oklahoma and the Tenth Circuit impose a contract on the relationship between students and universities. Materials actually provided to students, including enrollment agreements and catalogs, may become part of the agreement.

52.     Ms. Sutherland had an express and implied contract with Defendant OKWU in connection with rights explicitly guaranteed by the Student Handbook and the BSN Handbook.

53.     Ms. Sutherland dutifully complied with the mandates of the contractual materials governing her relationship with OKWU.

54.     In contrast, Defendant OKWU's treatment of Ms. Sutherland's purported conduct and confidentiality violations were extreme and out of scope with Student Handbook and BSN Handbook mandates, which "should be in writing" for Step 1, involve the completing of a corrective action form for Steps 2 and 3, and mandate completion of exit forms after Step 4.   Moreover, in all steps, some face-to-face communication is required by way of a conversation, a conference, a discussion, or an exit interview as promised.

    a)  Ms. Sutherland was not give a copy of, or permitted to read or discuss, the corrective action for her first purported violation.  Defendant also failed its contractually promised obligation to provide Ms. Sutherland with a document detailing the expectations for remediating her behavior after she was capriciously found in violation of school policy at the clinical site in February 2015.

    b) Ms. Sutherland was completely unaware the school performed an investigation or created writings about her second purported violation. Defendant failed its contractually promised obligation to provide Ms. Sutherland with expectations for remediating her behavior after she was capriciously found in violation of school confidentiality policy in class in September 2015.

c) Ms. Sutherland was not given clear information regarding her expulsion from the school in the fall of 2015.  Defendant OKWU failed its contractually promised obligation to provide Ms. Sutherland with exit conference and exit paperwork within two weeks of her expulsion.  In fact, Ms. Sutherland was not aware that she was indeed expelled until she retained an attorney following Defendant OKWU's refusal to respond to her calls and emails.

55.     Defendant further breached its contractual obligations by treating Ms. Sutherland differently on account of her divorced single mother status, in direct contravention with Student Handbook guarantee on page 54 that states:

"Oklahoma Wesleyan University does not illegally discriminate against persons on the basis of race, religion, sex, color, national or ethnic origin, age, disability, or military service in the administration of educational policies, programs, or activities, its admissions policies, scholarship and loan programs, athletic or other University administered programs, or employment."

56.     As a direct and proximate result of Defendant's unlawful breaches, Ms. Sutherland has suffered irreparable harm, injury, and damages, including but not limited to, monetary damages, loss of her bachelor education and BSN degree, time and resources, career opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment; and loss of personal and professional reputation, all to Ms. Sutherland's damages in an amount to be determined at trial but in excess of the jurisdictional threshold of this Court.

<u>**THIRD CAUSE OF ACTION**</u>

***Breach of Covenant of Good Faith and Fair Dealing***

57.     Each of the allegations set forth in paragraphs 1 through 56, inclusive, are hereby incorporated by this reference as if realleged fully herein.

58.     Oklahoma law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of Oklahoma.

59.     From September 2013 to her fall 2016 expulsion, Ms. Sutherland and Defendant OKWU engaged in several contracts in relation to Ms. Sutherland attending, and OKWU providing, a BSN in Nursing.

60.     Ms. Sutherland justifiably expected to receive certain benefits consistent with the agreements she entered into with Defendant OKWU upon enrollment, including fundamentally fair disciplinary hearings and equal treatment on the basis of religion and sex.

61.     Ms. Sutherland adjusted her academic, clinical site, and personal decisions and behavior in relation to Defendant's contractual promises to provide her with fundamentally fair processes and procedures in the event OKWU ever charged her with violations pursuant to both Handbooks.

62.     Ms. Sutherland met her side of the obligations by fulfilling obligations expected of an OKWU student and responding timely to all emails, calls, meetings, and other requirements imposed by Defendant.

63.     Defendant breached the covenant of good faith and fair dealing by abruptly expelling Ms. Sutherland without providing proper notice before hearings or meaningful

opportunity to present her side of the story. Defendant's bad faith motivation for terminating the contracts were deliberate and were in conjunction with Defendant's disapproval of Ms. Sutherland's openness with her status as a divorced single mother. Defendant was further motivated to terminate its relationship with Ms. Sutherland after Ms. Sutherland discussed a clinical patient's sexually-charged behavior in class, as the patient's identity could have caused OKWU embarrassment given the patient's long history with OKWU. Ms. Sutherland's dismissal occurred only weeks after she relayed information about the patient's inappropriate sexual behavior with the bedpan.

64.    As a direct and proximate result of Defendant's unlawful breach, Ms. Sutherland has suffered irreparable harm, injury, and damages, including but not limited to, monetary damages, loss of her bachelor education and BSN degree, time and resources, career opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment, and loss of personal and professional reputation, all to Ms. Sutherland's damages in an amount to be determined at trial but in excess of the jurisdictional threshold of this Court.

### FOURTH CAUSE OF ACTION

#### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

65.    Each of the allegations set forth in paragraphs 1 through 64, inclusive, are hereby incorporated by this reference as if realleged fully herein.

66.    Defendant acted, or failed to act, intentionally and recklessly, as described herein, and caused, and continues to cause, Ms. Sutherland severe emotional distress.

67.     As described herein, the conduct of Defendant OKWU is extreme and outrageous, and caused, and continues to cause, Ms. Sutherland severe emotional distress.

68.     Given the series of events Ms. Sutherland has had to endure in conjunction with her attendance at OKWU, Defendant intentionally inflicted emotional distress upon Ms. Sutherland.

69.     Agents of Defendant OKWU used the school's inappropriate and unbridled coercive power to repeatedly demoralize Ms. Sutherland for not conforming to OKWU's religious and moral expectations and for being a divorced single mother.  Such unfair and illegal behavior includes, but is not limited to:  holding a visibly upset Ms. Sutherland in a room and forcing her to confess why she is a single parent and why her marriage failed; inflicting capricious and damaging disciplinary measures against Ms. Sutherland to prevent her from rightfully discussing patient's highly inappropriate behavior so that it would spare the institution embarrassment; and condemning Ms. Sutherland for behavior less offensive than her classmates because of ingrained prejudice.  Compounding Ms. Sutherland's despair, her successful academic career has been stunted as well.

70.     The actions of Defendant were outrageous and intentional and done with malice and reckless disregard of the likelihood of causing Ms. Sutherland to suffer severe emotional distress.  In doing the acts alleged, Defendant acted knowingly, intentionally, and maliciously in total disregard for the effects on Ms. Sutherland.

71.     As a result of Defendant's intentional and negligent conduct and omissions, Ms. Sutherland suffered and continues to suffer great mental and emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and

humiliation; including, but not limited to:  depression, anxiety, loss of sleep, and change of appetite.

72.     As a direct and proximate result of Defendant's unlawful actions, Ms. Sutherland has suffered irreparable harm, injury, and damages, including but not limited to, monetary damages, loss of her education and BSN degree, time and resources, career opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment, and loss of personal and professional reputation, all to Ms. Sutherland's damages in an amount to be determined at trial but in excess of the jurisdictional threshold of this Court.

WHEREFORE, Ms. Sutherland prays for relief as follows:

1.      For general and compensatory damages in an amount to be determined at trial;

2.      For punitive damages in an amount to be determined at trial;

3.      Pre-judgment and post-judgment interest, as provided by law;

4.      Costs of action incurred herein, including expert fees;

5.      For injunctive relief to reinstate Ms. Sutherland to OKWU to complete the remaining classes necessary to obtain her BSN; and

6.      Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.

Dated this 14th day of October 2016.


Respectfully Submitted,

**GRAHAM & FREEMAN, PLLC**

By: *R. Jack Freeman*
R. Jack Freeman, OBA #3128
6226 East 101st Street, Suite 300
Tulsa, Oklahoma 74137-7117
Telephone: (918) 298-1716
Facsimile: (918) 298-1728
Email: jfreeman@grahamfreeman.com


**THE BACH LAW FIRM, LLC**

Jason J. Bach, Esq.
(Pro Hac Vice Pending)
Nevada Bar No. 7984
7881 West Charleston Blvd., Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Email:  jbach@bachlawfirm.com
*Attorneys for Plaintiff*